## In re Anonymous Nos. 89 D.B. 86 and 13 D.B. 88

Disciplinary Board Docket nos. 89 D.B. 86 and 13 D.B. 88.

McDONALD, *Member*, March 21, 1989 — Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## HISTORY OF PROCEEDINGS

This matter results from two petitions for discipline filed by office of disciplinary counsel on September 9, 1987 and February 2, 1988, respectively.

[Respondent] was admitted to practice law in the Commonwealth of Pennsylvania in 1978. The acts of misconduct charged against respondent occurred from March 1984 through December 1987 while he was practicing law in [   ] County.

The first petition for discipline (no. 89 D.B. 86) contains five charges and alleges that respondent violated three disciplinary rules, to wit:

(1) D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

(2) D.R. 6-101(A)(3), dealing with an attorney neglecting a legal matter entrusted to him; and

(3) D.R. 9-102(B)(4), dealing with a lawyer promptly delivering to the client, as requested by the client, properties in the lawyer's possession which the client is entitled to receive.

The second petition for discipline contains two charges. Charge I alleged that respondent violated D.R. 9-102(A), relating to the failure to deposit client funds into an identifiable bank account. Charge II alleged that respondent violated D.R. 1-102(A)(1), dealing with lawyers who violate a disciplinary rule, in particular rule 203(b)(2) (failure to appear before office of disciplinary counsel for informal admonition).

Respondent did not file an answer to either petition. A hearing was held before Hearing Committee [   ] on May 8, 1988, at which time respondent failed to appear although he had received notice of the hearing.

Hearing Committee [   ], consisting of [   ], filed

its report December 7, 1988 and found that respondent had violated the following disciplinary rules:

(1) D.R. 6-101(A)(3), neglect of legal matter entrusted (charges I through V of no. 89 D.B. 86);

(2) D.R. 9-102(B)(4), failure to promptly deliver to the client properties which the client is entitled to receive (charges I through III of no. 89 D.B. 86);

(3) D.R. 1-102(A)(4), conduct involving dishonesty, fraud, deceit or misrepresentation (charge III of no. 89 D.B. 86);

(4) D.R. 9-102(A), failure to deposit client funds into an identifiable bank account (charge I of no. 13 D.B. 88); and

(5) D.R. 1-102(A)(1), dealing with a lawyer violating a rule of disciplinary enforcement (charge II of no. 13 D.B. 88).

The hearing committee recommended to the board that respondent be suspended from the practice of law for a period of not less than four years. In its recommendation for discipline, the committee described respondent's misconduct as a "pervasive and continuing pattern of neglect and non-responsiveness, coupled with overt acts of misrepresentation and deceit. . . . "

The matter was referred to this board for review and recommendation to your honorable court and was considered by this board on January 27, 1989. The Disciplinary Board concurs in the hearing committee's findings of fact, conclusions of law and recommendations for discipline to be imposed.

## FINDINGS OF FACT

As previously aforementioned, respondent failed to appear at his own hearing. Moreover, no other witnesses testified on his behalf. Thus, this board substantially adopts the hearing committee's find-

ings of fact which were based on the stipulations and exhibits admitted into evidence.

(1) Respondent, [   ], was born in 1940, admitted to practice law in the Commonwealth of Pennsylvania in 1978, is a sole practitioner, and, at the time of the events complained of, was practicing law in [   ] County. He now resides in [   ] County, where the board believes he continues to practice law, there being no evidence to the contrary.

*89 D.B. 86*

*Charge I*

(2) In or around June 1985, [A] filed a petition for modification of existing support order against her former husband, [B], in the Court of Common Pleas of [   ] County, seeking to collect arrearages in the amount of $883 for medical bills which complainant allegedly owed her pursuant to a previous court order.

(3) On or about June 11, 1985, respondent was retained to represent [B] in regard to the petition for modification of support order filed by his former wife.

(4) [B] paid respondent $167 at that time for his services in regard to this matter.

(5) On May 28, 1985, respondent entered his appearance on behalf of [B] in the support litigation with his former wife, [A].

(6) On June 11, 1985, respondent, as [B's] attorney of record, appeared at a hearing in regard to the petition for modification of the existing support order.

(7) After the June 11 hearing, an order dated that same day was issued directing [B] to pay support to his former wife for both of their sons, [C] and [D],

in the amount of $330 per month and to pay his former wife $165 per month on the support arrears of $823.

(8) Subsequently, respondent and counsel for [A], [E], Esq., reached a verbal agreement on a consent order which would not include support for [C].

(9) Respondent was to draft the agreement, have [B] sign it, and then forward it to [E] for her client to sign.

(10) [E] would testify that, when a signed consent agreement was not forthcoming from respondent, she attempted to contact him by telephone but was unable to reach him.

(11) Throughout the period of respondent's representation in this matter, from May 28, 1985 through March 6, 1986, the support order remained unmodified and [C] remained on the order.

(12) In or about February 1986, [B's] new counsel, [F], notified respondent by letter that he wished respondent to forward to him his file on this matter.

(13) Respondent did not deliver [B's] file to [F].

### Charge II

(14) In January 1985, [G] filed a paternity action against [B] (the same individual referred to in charge I), asking that he be ordered to pay support for her minor child.

(15) Actual service of the complaint was not made on [B], because the complaint was mailed to an address at which he no longer resided.

(16) On August 8, 1985, a hearing was held in the Court of Common Pleas of [ ] County on the support and paternity suit filed against [B].

(17) [B] failed to appear at the hearing since he had not received actual notice of that hearing.

(18) An order of court was issued in which [B]

was ordered to pay [G] $270 per month for support and $135 per month on arrears for support of the infant which he has allegedly fathered.

(19) In or about October 1985, [B] received notice of what had transpired at the August 8, 1985 hearing and retained respondent to attempt to open the judgment on the matter, paying respondent $300 at that time for his services.

(20) In or about January 1986, [B] attempted to contact respondent at his office to inquire into this matter, but was advised that respondent's telephone had been disconnected.

(21) By letter dated February 26, 1986, [B's] new attorney, [F], Esq., requested that respondent forward the file to him.

(22) Respondent did not respond or deliver the file.

(23) No petition to open, strike or modify the judgment was filed on behalf of [B] during the period of respondent's representation. The petition filed on March 7, 1986 was after new counsel had been retained.

## Charge III

(24) In or about September 1983, respondent agreed to represent [H] in several legal matters.

(25) [H] would testify that, by letter dated June 15, 1983, he sent various documents relating to a possible civil action against [I] to respondent, pursuant to his request.

(26) Between June 1983 and March 1984, [H] telephoned respondent at his office on several occasions. During these conversations [H] requested information concerning the status of the [I] matter. Respondent informed [H] that he was attempting to arrive at a negotiated settlement with [I].

(27) [H] would testify that, in or about March 1984, he authorized respondent to file a lawsuit against [I] in [ ] County and respondent advised [H] that a hearing would probably occur in or about September 1984.

(28) In or about September 1984, [H] contacted respondent at his office by telephone regarding the [I] matter. During this conversation [H] inquired whether it was necessary for him to appear at a hearing. [H] would testify that respondent advised him that the hearing would be delayed because [I] had not been properly served with a copy of the complaint.

(29) In fact, a complaint had not yet been filed in that matter with respondent.

(30) On or about November 2, 1984, respondent filed a complaint for [H] against [I] in [ ] County, and a hearing was set in that matter for January 3, 1985.

(31) Shortly thereafter, respondent notified [H] of the January 3 hearing date.

(32) On or about December 3, 1984, the [ ] County sheriff's office returned the notice of hearing to the prothonotary's office because of its inability to serve a copy of the complaint on [I].

(33) [H] would testify that, on December 31, 1984 he met with respondent at respondent's residence regarding the [I] matter. During this meeting, respondent advised [H] that there had been an "error" and that respondent would notify him on January 2, 1985 as to the status of the case.

(34) On January 2, 1985, respondent telephoned [H]. During this conversation respondent informed [H] that the hearing had to be rescheduled. [H] expressed his dissatisfaction with the delay and informed respondent that he wanted the matter "cleared up" as soon as possible.

(35) Shortly thereafter, respondent telephoned [H] regarding this matter. [H] would testify that, during this conversation, respondent informed [H] that the hearing had been rescheduled for April 26, 1985. Respondent therein falsely represented to [H] that a hearing had been scheduled in this matter.

(36) In fact, no such hearing had been scheduled, nor had the complaint even been served upon [I].

(37) In or about early April 1985, [H] telephoned respondent regarding the [I] matter. [H] would testify that during this conversation, respondent falsely informed [H] that [I] had been served with the complaint, but had not yet filed an answer. Respondent indicated to [H] that his presence at the supposedly-scheduled hearing was not necessary, as it was "likely" that [I] was going to default.

(38) In about late April 1985, [H] telephoned respondent regarding the status of the matter. [H] would testify that, during this conversation, respondent informed [H] that a default had been entered against [I] and that the issue should be "final" within several months.

(39) In fact, no such judgment had been entered against [I] and respondent had not even caused [I] to be served with the copy of the complaint he had filed.

(40) [H] would testify that, between April 1985 and June 1985, [H] telephoned respondent's office on several occasions requesting that he contact him. He would further testify that in each instance [H] left a message for respondent and that respondent failed to return any of these calls.

(41) In June 1985, [H] sent respondent a letter requesting that respondent contact him regarding the status of the [I] matter. [H] would testify that respondent failed to respond to this letter.

(42) By letter to respondent dated July 27, 1985, [H] asked that respondent contact him regarding the [I] matter. In that letter, [H] requested that respondent forward to him the complete file in the [I] matter within two weeks from the date of the letter. Respondent failed to respond to this letter or to deliver the file to [H].

(43) By letter dated August 19, 1985, Attorney [J] contacted respondent. Attorney [J] informed respondent that he had been retained by [H] to represent his interests in the [I] matter. Attorney [J] requested that respondent forward the file in this matter to [H]. Attorney [J] would testify that respondent failed to respond to this letter or to deliver the file.

(44) [H] would testify that, on or about September 18, 1985, [H] telephoned respondent at his office. [H] would testify that, during his conversation with respondent, he again requested that respondent forward the file in the [I] matter to him. Respondent again failed to forward this file to [H].

## Charge IV

(45) On or about June 19, 1984, [K] retained respondent to represent the interest of her daughter, [L], an invalid, in a suit filed by [M] Home et al. claiming money owed for the care of [L], for which [K] paid respondent an $800 fee.

(46) On or about December 5, 1984, respondent represented [L] at an arbitration hearing in the [   ] County Court of Common Pleas, Civil Division, at which time a total award of $13,321.45 was made to [M] against [L].

(47) By check dated January 2, 1985, [K] paid respondent an additional $170 to appeal the arbitration panel's decision.

(48) On January 4, 1985, respondent filed a notice of appeal requesting a jury trial.

(49) In about February 1986, respondent received a copy of the plaintiff's pretrial statement.

(50) On March 20, 1986, notice of a pretrial conference scheduled for May 2, 1986 was published in the [  ] Legal Journal.

(51) Respondent failed to file a pretrial statement on behalf of [L], in accordance with local rules of court.

(52) On May 2, 1986, respondent failed to appear on behalf of [L] at the duly scheduled pretrial conference and, as a result, the judge dismissed the appeal.

## Charge V

(53) Respondent was retained to represent [N], who had been convicted of robbery and third-degree murder on May 20, 1976 and incarcerated as a result of a sentence of a total of 15 to 30 years imprisonment.

(54) Respondent was to prepare and present to the court a Post Conviction Hearing Act (PCHA) petition for [N].

(55) On November 17, 1984, [O], [N's] mother, paid respondent $850 by check (which respondent cashed) on behalf of [N] for respondent's representation of him in the PCHA action.

(56) [O] would testify that since November 17, 1984, she has attempted to reach respondent on many occasions by telephone but without success and that, as of July 1986, respondent has failed to respond to any of the messages she left.

(57) By a letter to respondent dated July 21, 1986, [O] reminded respondent that she had paid him $850 on November 17, 1984 and asked him to

account to her for his use of those funds. Respondent did not respond to the letter. As of May 5, 1987, [O] had received no communication from respondent.

(58) As of August 17, 1987, respondent has not filed a petition for a hearing under the Post Conviction Hearing Act on· behalf of [N] nor has he refunded the $850 fee to [N] or to [O].

## 13 D.B. 88

### Charge I

(59) In November 1986, respondent was engaged as counsel for [P], a.k.a. [P]. Respondent had been referred to [P] by [Q].

(60) On December 19, 1986, respondent received $1,600 in cash from [Q]. Those funds were to be paid by respondent as bail for [P's] release. [P's] bail had been set for an amount in excess of $1,600. Respondent had been given insufficient funds to secure [P's] release at that time.

(61) Instead of depositing the $1,600 he had received from [Q] into an identifiable bank account pending his receipt of additional funds such as would enable him to obtain [P's] release, respondent placed the cash into his file on the case.

(62) As of December 15, 1987, respondent had neither returned those funds nor deposited them into an identifiable bank account.

(63) There being no evidence as to the date of hearing, of either the return of the aforementioned funds or their deposit into an identifiable bank account, the conversion of said funds by respondent is found to have occurred.

### Charge II

(64) In October 1987, in regard to a disciplinary complaint investigated under file reference no. [     ],

the reviewing member determined that respondent should receive an informal admonition, upon certain conditions.

(65) By letter dated November 13, 1987, received by respondent no later than November 18, 1987, respondent was notified to appear in petitioner's District [ ] Office in [ ] on November 23, 1987 for imposition of the informal admonition.

(66) Respondent indicated that he would be unavailable on November 23, 1987.

(67) Respondent arranged to appear on November 25, 1987 in petitioner's District [ ] office in [ ] for imposition of the informal admonition. The informal admonition was to be administered in [ ] at respondent's request.

(68) On the morning of November 25, 1987, respondent telephoned the District [ ] office. He indicated that he had "missed his transport," but was arranging to be there at some time that same afternoon.

(69) Respondent failed to appear in petitioner's District [ ] Office on November 25, 1987 or to further communicate in regard thereto.

(70) On December 4, 1987, after numerous messages had been left for respondent by representatives of petitioner, respondent telephoned the District [ ] office. It was arranged at that time that respondent would appear in petitioner's District [ ] office on December 16, 1987 at 2:00 p.m. for imposition of the informal admonition.

(71) It was respondent, rather than petitioner, who selected the date and time for imposition of the informal admonition.

(72) On December 16, 1987, respondent failed to appear for his informal admonition and did not communicate any reason for his failure to appear.

(73) By letter dated December 21, 1987, respondent was notified to appear on January 14, 1988 at petitioner's District [ ] office for imposition of his informal admonition.

(74) On January 14, 1988, respondent failed to appear for imposition of the informal admonition, and gave no reason for his failure to appear.

(75) Respondent has willfully failed to appear for imposition of the informal admonition.

(76) The conditions attached to the informal admonition were that respondent must refund the portion of fees and costs which were unearned in connection with four different matters and that respondent was to deliver files and client properties to the respective clients in two of these four matters.

(77) Respondent was required to file an affidavit setting forth either his compliance with the aforesaid conditions or his position as to why he was not required to comply with the conditions.

(78) Respondent filed the required affidavit asserting that all files and client properties had been returned but that there were no unearned fees to be returned in any of the four matters. To the contrary, he asserted that several of the clients owed him money.

## CONCLUSIONS OF LAW

The board substantially adopts the conclusions of law of the hearing committee as follows:

### 89 D.B. 86

#### Charge I

(1) The board cannot find that respondent violated Disciplinary Rule 1-102(A)(4) dealing with

conduct involving dishonesty, fraud, deceit and misrepresentation because there is no stipulated fact or document admitted into evidence which would permit a finding that respondent misrepresented to [B] that he had provided the legal service he was retained to provide when, in fact, he had not.

(2) The board finds that respondent did violate Disciplinary Rule 6-101(A)(3) when he failed to prepare the consent order as agreed, thus letting stand the incorrect support order entered at the hearing in which he was present for the purpose of representing his client on this matter.

(3) The board finds that respondent did violate Disciplinary Rule 9-102(B)(4) when he failed to deliver the client's file to [B's] new counsel, [F].

## Charge II

(4) The board finds that respondent did violate Disciplinary Rule 6-101(A)(3) dealing with an attorney neglecting a legal matter entrusted to him when he failed to communicate with his client after October 1985 to tell him the status of his case, failed to give his client a new telephone number or other way to contact him after respondent's telephone was disconnected in January 1986 and failed to prepare and file a petition to open, strike or modify the judgment previously entered against his client.

(5) The board finds that respondent did violate Disciplinary Rule 9-102 (B)(4) when he failed to deliver the client's file to his new lawyer.

## Charge III

(6) The board finds that respondent did violate Disciplinary Rule 1-102(A)(4) dealing with conduct

involving dishonesty, fraud, deceit or misrepresentation when he informed the client that a hearing would probably be held in September 1984; that the hearing had been delayed because the complainant had not been properly served, when in fact it had not even been filed; that the hearing had to be "rescheduled," when in fact no hearing had been scheduled and the complaint had not even been served; and that a default judgement had been entered against [I].

(7) The board finds that respondent did violate Disciplinary Rule 6-101(A)(3) dealing with an attorney neglecting a legal matter entrusted to him when he neglected to prepare the complaint, neglected to serve the complaint, neglected to return his client's telephone calls and neglected to respond to his client's correspondence to him.

(8) The board finds that respondent did violate Disciplinary Rule 9-102(B)(4) when he failed to forward the client's file to the client or to the client's new attorney when requested to do so.

### Charge IV

(9) The board finds that respondent did violate Disciplinary Rule 6-101(A)(3) dealing with an attorney neglecting a legal matter entrusted to him when he failed to file a pretrial statement and failed to appear at a pretrial conference, resulting in dismissal of his client's appeal.

### Charge V

(10) The board finds that respondent did violate Disciplinary Rule 6-101(A)(3) dealing with an attorney neglecting a legal matter entrusted to him when he failed to respond to telephone messages left by [O], failed to respond to correspondence from

[O], and failed to file the petition for a hearing under the Post Conviction Relief Act or refund the fee paid to him for that purpose.

## 13 D.B. 88

### Charge I

(11) The board finds that respondent did violate Disciplinary Rule 9-102(A) relating to the depositing of client funds into an identifiable bank account when he failed to deposit client funds into an identifiable bank account but instead placed the cash in his file.

### Charge II

(12) The board finds that respondent did violate Disciplinary Rule 1-102(A)(1) dealing with a lawyer violating a disciplinary rule i.e., 203(b)(2) when he willfully and repeatedly failed to appear before the Office of Disciplinary Counsel for an informal admonition, particularly where one of the scheduled times was selected by respondent.

## DISCUSSION

Pursuant to Pa.R.D.E. 208(d)(2) the board has the authority to either affirm or modify the hearing committee's recommendation. In the instant case, neither disciplinary counsel nor respondent filed objections to the hearing committee's findings of fact, conclusions as to violations of the disciplinary rules, or the recommended imposition of discipline.

The board believes that the hearing committee's evaluation of respondent's pattern of misconduct is accurate and that its recommendation of a four-year

suspension is proper. The facts clearly demonstrate that respondent engaged in continuous acts of misrepresentation, deceit and neglect of legal matters entrusted to him.

Respondent's pattern of violations is of the most serious nature and has caused substantial prejudice to his clients. Specifically, he neglected to prepare the consent order as he had agreed to do, thereby causing the incorrect support order to stand. Respondent also falsely informed another client that the client's hearing had been delayed due to improper service of the complaint, when in fact the complaint had never been filed; that the hearing had to be "rescheduled," when in fact no hearing had been scheduled. Further, respondent failed to file a pretrial statement and failed to appear at a pretrial conference, resulting in dismissal of another client's appeal. In a different matter, a client hired respondent to file a petition for a hearing under the Post Conviction Relief Act, which respondent neglected to do, resulting in a continued jail sentence with no post-conviction evaluation by the court.

The hearing committee also correctly found the same pattern of neglect and non-responsiveness when respondent was confronted by the Office of Disciplinary Counsel. Respondent intentionally and repeatedly failed to appear before the Office of Disciplinary Counsel for the less severe imposition of an informal admonition. Again, it must be emphasized that respondent offered no evidence to show that he will make an effort to not return to a prior pattern of conduct, or that there are mitigating circumstances in his case which should lighten his sanction.

In consideration of all of the factors set out above, the board believes the recommendation of the hear-

ing committee is the appropriate discipline to be imposed. *In re Anonymous No. 13 D.B. 80*, 20 D.&C. 3d 470 (1981); and *In re Anonymous No. 15 D.B. 81*, 22 D.&C. 3d 254 (1981) are cited in the committee's recommendation for discipline as authority which would support a four-year suspension in respondent's case.

## RECOMMENDATION

The board recommends to the Supreme Court of Pennsylvania that [respondent] be suspended from the practice of law in the Commonwealth of Pennsylvania for a period of four years. It is further recommended that the court direct that all necessary expenses and costs incurred with this action be borne by and paid for by respondent.

Messrs. Schwartzman and Tumolo did not participate in the adjudication.

## ORDER

And now, August 31, 1989, upon consideration of the report and recommendations of the disciplinary board dated March 21, 1989, it is hereby ordered that [respondent] be and he is suspended from the bar of this commonwealth for a period of four years, and he shall comply with the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice Papadakos dissent and would issue a rule to show cause why respondent should not be disbarred.